UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BARBARA GILLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-CV-251 |
| | ) | (VARLAN/GUYTON) |
| V. | ) | |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Judge. Defendant's Motion to Dismiss as Sanctions for Discovery Abuse and for Spoliation [Doc. 94] is pending before the undersigned. The parties appeared before the undersigned on March 8, 2013, to address the Motion to Dismiss and a motion *in limine* pending. Attorneys Adam Holland and Philip Fleenor were present representing the Plaintiff, and Attorneys Ellen Boshkoff and Michael Moschel were present representing the Defendant.

The Court has considered the parties' filings on this issue along with their oral arguments. For the reasons stated below, the undersigned will **RECOMMEND** that the Motion to Dismiss as Sanctions for Discovery Abuse and for Spoliation be **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

Plaintiff was employed by the Defendant.  Defendant terminated Plaintiff's employment in December 2008 because Plaintiff allegedly failed to complete a computer-based compliance training ("the Red Book training") on time, allegedly lied about it, and then allegedly falsified a completion certificate. In an attempt to prove she had completed the training by the deadline, Plaintiff faxed to Defendant, on December 12, 2008, and later sent via Federal Express two documents purporting to be training verification certificates indicating she had completed the training on November 10, 2008.

Lori Cochrane, a human resources representative for the Defendant, was suspicious of Plaintiff's claim to have such certificates. She contacted Defendant's training and compliance department to inquire about Red Book training procedures. Cochrane allegedly learned that the Red Book training program was only set up to capture an electronic signature and was not enabled to display a certificate of completion on the screen or to print out a certificate. Cochrane also allegedly learned that Plaintiff had not completed Red Book training until on or about December 6, 2008. Defendant states that the Plaintiff's employment was terminated, based upon this information, effective December 29, 2008.

Plaintiff maintains that she completed the Red Book Training on November 10, 2008, prior to the expiration of the deadline for doing so.  [Doc. 95-1 at 9-10].  Plaintiff maintains that when she completed the training, a certificate of completion appeared on her screen, but it would not print out. Id.  In her first deposition, Plaintiff testified that she took a picture of the certificate with her own cell phone when the certificate would not print out. [Doc. 95-1 at 10]. She further testified that she transferred the picture with a USB cord to the printer and printed it. [Id.]. When asked if she still had that cell phone, Plaintiff replied: "I believe I do, yes." [Id.].

Following her first deposition, Defendant asked Plaintiff to produce the cell phone and allow Defendant to inspect the digital file. In response, Plaintiff advised Defendant that the cell phone with which Plaintiff had taken the photograph was no longer in her possession. [Doc. 95-5 at 4]. Plaintiff's counsel also responded:

> First, with respect to the request for the digital file of the Red Book Training Certificate, it is my understanding that the photo was taken by cell phone and was thereafter downloaded to the Plaintiff's company lap top computer via USB cable. The "digital file" would therefore be on Plaintiff's company lap top which was returned to Lilly at the time she was terminated. We do not have what was sent to Plaintiff's cell phone by the daughter on December 29, 2008. . . . .

> Second, the cell phone used to photograph the Red Book Training Certificate was returned to Verizon Wireless after ordering a new cell phone. Plaintiff has been informed by Verizon Wireless that once the old cell phones are returned to the manufacturer, the manufacturer does a Master Reset, cleaning the phone of all data for re-sale purposes. . . . .

[Doc. 95-8 at 2].

As a result of Plaintiff's changed testimony regarding the cell phone, Defendant asked to take a follow up deposition of Plaintiff, which occurred on February 14, 2013. [See Doc. 95-1 at 14]. In the second deposition, Plaintiff testified she took two different photographs of the certificate: a photograph of the screenshot of the certificate with her cell phone ("Photo #1") and with her daughter's cell phone ("Photo #2"). [Id. at 23]. Plaintiff contends that she then connected her daughter's cell phone to the laptop issued to her by Defendant with a USB cable, downloaded the photograph from the cell phone, saved to her "desktop" folder on her laptop, and then printed the picture. [Id. at 26].

Plaintiff confirmed that retaining a copy of this photo was important and that was why she wanted a copy. [Id. at 27]. She testified that on December 12, 2008, she called or texted her

daughter, confirmed that her daughter still had the photo of the certificate on her phone, asked her not to delete it, and asked her daughter to send it to her. Plaintiff stated that her daughter sent the photo to her Hotmail email address. [Id. at 34-35]. Plaintiff confirmed that on December 29, 2008, she sent the photo to Attorney David Burkhalter. She confirmed that the photo was sent from her Hotmail account. [Id. at 35]. Plaintiff stated that this Hotmail account has not been terminated and "still exists," but she asserted that she "can't get into it." [Id.]. She asserts that she does not know the password to a personal email account. [Id. at 33 (asserting that she lost the password to an email account)].

Defendant submits that according to Plaintiff's testimony, by December 29, 2008, there were at least six digital files of photographs of the purported training certificate that had been taken with either Plaintiff's cell phone or her daughter's cell phone, including: (1) the digital file on Plaintiff's cell phone of the photograph she took with own cell phone (*i.e.*, Photo #1); (2) the digital file on Plaintiff's daughter's cell phone of the photograph taken with Plaintiff's Daughter's cell phone (*i.e.*, Photo #2); (3) the digital file of Photo #2 on saved on the laptop issued by Defendant; (4) the digital file on Plaintiff's cell phone or in her Hotmail email account of Photo #2 sent to Plaintiff by her daughter on December 12, 2008; (5) the digital file in Plaintiff's Hotmail email account of Photo #2 sent to her attorney on December 29, 2008 of Photo #2; and (6) the digital file in Plaintiff's attorney's email of the text and photograph he received from Plaintiff on or about December 29, 2008. Defendant maintains that Plaintiff has not produced any of these digital photos and apparently failed to preserve any of them.

Two additional issues surfaced in early 2013. First, Plaintiff testified that there could be a "box of emails" relevant to the case that have yet to be produced. [Doc. 95-1 at 33].[1] Second,

---

[1] On February 14, 2013, Plaintiff testified:
      Q: You started sending yourself a whole bunch of e-mails in November right before you were fired?

Plaintiff disavowed a document that she produced in discovery, which purports to be a certificate of completion of the training for the Red Book that is at issue in this case.[2]

Thus, presently there are three issues pending before the Court: (1) the Plaintiff's failure to preserve and produce the digital files of the photos taken of the certificate of completion screen using Plaintiff's phone and her daughter's phone; (2) the additional "box of emails" that has not been produced; and (3) the Plaintiff's disavowing of the certificate of completion produced by Plaintiff, or her representative, in discovery and marked as PLF000436.

## II.    ANALYSIS

The Court will address each of these issues in turn, and the Court will incorporate the positions of the parties in the analysis of each issue.

### A.    Rule 37 of the Federal Rules of Civil Procedure

Rule 37 of the Federal Rules of Civil Procedure states:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>
> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this

---

A: Is there a problem with that?
Q: They haven't been produced in discovery. Do you have an explanation for that?
A: They're in a box somewhere, and I'm not the – I can't – I didn't – I can't go do this. I wasn't representing myself.
Q: No, your obligation is to make sure that your lawyer has everything.
A: He does have everything.
Q: Okay. So we think there's a box of e-mails somewhere that haven't been produced?
A: Yes.

[2] An email sent by Adam Holland, counsel for the Plaintiff, states "Ms. Gilley does not recognize document PLF 436 and has no idea where it came from nor why it was produced by her counsel. She is adamant that the training test did not display a certificate entitled 'The Red Book Training', she stated to me that it simply stated 'The Red Book' when it appeared on her screen. Obviously you can ask here [sic] about this at her supplemental deposition tomorrow." [Doc. 95-14].

sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The sanctions listed in Rule 37(b)(2)(A)(i)-(vi), include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [and] (vi) rendering a default judgment against the disobedient party." Id. (formatting modified).

In this case, the Defendant focuses, almost exclusively, upon the fifth of these sanctions: dismissing the action. When considering a dismissal as a sanction for discovery infractions, the Court must consider four factors, including whether: (1) the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) the adversary was prejudiced by the party's failure to cooperate in discovery; (3) the party was warned that failure to cooperate could lead to the sanction; and (4) less drastic sanctions were first imposed or considered. Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997).

**B.    Plaintiff's Failure to Preserve Digital Images**

The Defendant maintains that the Plaintiff failed to preserve or produce any of the six digital images of the certificate. The Defendant argues that the Plaintiff failed to preserve these digital files, despite recognizing that they were "important." [Doc. 95 at 13]. Defendant argues

6

that the Plaintiff cannot be excused from her duty to preserve and produce the digital images by casting blame on her former counsel. [Id.]. Defendant submits that this case turns on the legitimacy of the training certificate and the completion of the training. [Id. at 15]. Defendant contends that the digital images – more specifically, the metadata attached to the digital images– "could provide information regarding the precise date and time the photograph was taken and when it was saved to various locations." [Id. at 16]. Essentially, Defendant argues that, despite the fact that the digital images are the only original evidence of the Plaintiff's alleged receipt of a training certificate, the Plaintiff took no steps to preserve this critical evidence. [Id. at 1].

The Plaintiff does not dispute Defendant's contention that she did not preserve the photo images in their digital forms – *i.e.* as jpegs or similar digital format. The Plaintiff, instead, argues that she has produced these images as printed documents, and she implies that the printed versions of the images are sufficient. Plaintiff states that she has produced close to 1,000 pages of documents, including printed copies of the images. [Doc. 100 at 3]. Plaintiff does not deny that the photos were not produced in digital format or that she failed to preserve the photos in digital format. Rather, she posits, "Defendant has never requested in formal discovery that Plaintiff produce any digital pictures of the Red Book certificate." [Id. at 4]. Plaintiff maintains that she sent printed copies of the images at issue to the Defendants by fax and FedEx, in December 2008. [Doc. 100 at 4].

Initially, the Court finds that the Plaintiff's own testimony indicates that there were six digital images of the certificate of completion that is alleged to have displayed on her computer screen upon completion of her Red Book training. Plaintiff does not dispute the assertion that she has failed to preserve any of these digital images. Thus, the Court finds that the Plaintiff failed to preserve six digital images of the certificate of completion.

The Court further finds that these images in their printed form are not equivalent to the images in their digital form. Plaintiff does not dispute that metadata, including the date and time the image was captured, are not available to the Defendant through the printed forms that have been provided to the Defendant. Moreover, the Court finds that this metadata has almost certainly been lost forever. It is important to note that, while it appears that the Plaintiff could possibly gain access to the Hotmail account through which the digital images were allegedly sent by contacting the operator of the email service, counsel for the Plaintiff *never* represented to the Court that the Plaintiff was prepared to present the digital images to opposing counsel or the Court.

The Court finds that at least negligent destruction of evidence has occurred. With Rule 37 of the Federal Rules of Civil Procedure in mind, the Court turns to the case law of the Sixth Circuit to determine if this destruction constitutes spoliation.

The Court of Appeals for the Sixth Circuit has clarified that a federal court in the Sixth Circuit should apply federal law in determining whether spoliation sanctions are appropriate. See Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009). Under applicable federal law, the party seeking adverse inference must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence destroyed was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant to the party's claim or defense." Beavan v. United States, 622 F.3d 540, 553 (6th Cir. 2010).

The Court of Appeals has implied that these same elements are applied in evaluating spoliation sanctions, other than requests for adverse inferences. Id. at 554. The district court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or

destroyed evidence." Id. (quoting Adkins, 554 F.3d at 653). A party's failure to preserve relevant evidence calls upon the court to craft an appropriate sanction considering where the behavior falls "along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality." Id. at 653 (quoting Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988).

1.    *Plaintiff had Control and Obligation*

The Court finds, first, that the Plaintiff was the party with control over the evidence and that she had an obligation to preserve it at the time it was destroyed. The Plaintiff has never disputed that she had control over the digital images. She apparently relinquished control to the phones on which Photo #1 and Photo #2 were stored on her own volition, and she now claims to not remember how to access her email to retrieve the other images. The Plaintiff's voluntary or grossly negligent relinquishing of control does not undermine the control that she had over these images during the relevant periods.

The Plaintiff certainly had a duty to preserve the digital images. The Plaintiff caused the digital images to be produced by her phone's camera and then by the camera on her daughter's phone precisely because she knew the images were important to her employment. She was terminated by the Defendant on or about December 24, 2008, less than six weeks after the photo of the certificate was allegedly first taken and less than two weeks after she asked her daughter to send the digital photo from the daughter's phone to the Plaintiff's email or phone. Moreover, on or about December 29, 2008, the Plaintiff forwarded the message from her daughter containing the digital photo to Plaintiff's attorney. Plaintiff testified in her deposition that she took the digital photos because the Red Book test was "important." [Doc. 95-1 at 27].

Further, Plaintiff had been in touch with David Burkhalter, who later served as counsel in this matter, as early as September 2008, with regard to allegations of discrimination on the part of Defendant. [Doc. 95-2 at 2-3]. The date on which Mr. Burkhalter was retained to represent Plaintiff in this litigation is the subject of dispute. [Doc. 95-1 at 34-35]. A signature, purporting to be the signature of the Plaintiff, is affixed to a Representation Agreement with Mr. Burkhalter dated December 24, 2008. [Doc. 95-2 at 20]. Plaintiff disavowed this date, [Doc. 95-1 at 34], but Plaintiff has testified that she sent at least one of the digital images at issue to Mr. Burkhalter on December 29, 2008, [id. at 35]. It is undisputed that he was retained no later than January 16, 2009. On January 16, 2009, Mr. Burkhalter sent a letter noting the doctrine of spoliation and directed the Defendant to immediately preserve *inter alia* texts and emails. [Doc. 95-2]. The Court finds that the Plaintiff knew or should have known that the digital images would be relevant to forthcoming litigation.

Under these circumstances, the Court finds that the Plaintiff had a duty to preserve the digital photos.

2.    *Plaintiff was Culpable Because She Either Knowingly or Negligently Destroyed the Evidence*

The Court turns next to the issue of culpability. The Court of Appeals for the Sixth Circuit has held that "[a]n obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation, but, if there was no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case and intentional destruction." Beaven, 622 F.3d at 554 (internal quotations and citations removed). The culpable state of mind factor is satisfied by showing that evidence was destroyed knowingly or negligently, even without demonstrating intent to breach the duty to preserver. Id. (citing

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)); see also Stocker v. United States,  705 F.3d 225, 235 (6th Cir. 2013).

Analysis of the Plaintiff's culpability overlaps, to a degree, with the Court's analysis of her duty to preserve the digital images above, and the Court incorporates the findings relating to Plaintiff's knowledge herein.  In brief, the Court finds that the Plaintiff knew or had reason to know as soon as she took the photos with her phone in November 2008, that these photos could be relevant to future litigation.  This knowledge was again demonstrated on December 12, 2008, when she asked her daughter to resend the digital photo because she wanted a "backup" of the photo, [Doc. 95-1 at 34], because it was important [id. at 35].  Perhaps most importantly, on December 29, 2008, Plaintiff sent the photo to counsel, and the Court finds that she thereby demonstrated that she knew – or at a minimum, should have known that – the evidence may be relevant to future litigation.

Accordingly, the Court finds that the Plaintiff was culpable because she knew or should have known that the digital images could be relevant to future litigation.  The Court, therefore, finds that the Plaintiff had a culpable state of mind.

3.     *The Evidence Destroyed is Relevant*

Finally, the Court finds that the metadata that has been lost and the images in digital form are relevant evidence.  The Plaintiff does not dispute this finding.  The Court finds that the issues in this case turn on the dates and times that certain tasks – *i.e.* training on the Red Book – were completed.  The digital images and metadata would have made the dates and times alleged by the parties "more or less probable" than they would have been without the evidence.  See Fed. R. Evid. 401.

Accordingly, the Court finds that the digital images, which have been lost/destroyed, were relevant. Thus, the Court finds that: (1) the Plaintiff had control over the evidence and a duty to preserve it; (2) the Plaintiff had a culpable state of mind; and (3) the digital images that were lost/destroyed were relevant. The Court finds that the Plaintiff's arguments that Defendant did not formally request the digital images, or in the alternative, that the Defendant's request for relief is barred by undue delay are not persuasive or well-taken. Therefore, the Court finds a sanction based upon spoliation of evidence is appropriate.[3]

4.     *An Instruction to the Jury Regarding Inferences, Combined with the Availability of Cross-Examination, is an Appropriate Sanction*

The Court turns to the imposition of an appropriate sanction. As noted above the Court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." Beaven, 622 F.3d at 554.

The Defendant has suggested that dismissal of this action is an appropriate sanction. The Court finds that this sanction is too extreme a remedy for the Plaintiff's behavior. The Court of Appeals for the Sixth Circuit has indicated that dismissal is an appropriate spoliation sanction where a defendant has been denied the opportunity to develop its defenses adequately and/or when bad faith is found. See Arch Ins. Co. v. Broan-NuTone, LLC, 2012 WL 6634323 (6th Cir. Dec. 21, 2012).

In this case, the Plaintiff has produced printed copies of the digital images at issue; thus, the Defendant has not been wholly denied access to the images. The Court recognizes that these printed copies deny the Defendant the metadata and other relevant information that could have been provided through the digital images. Nonetheless, the Defendant will have the opportunity

---

[3] The Court finds that the spoliation analysis, as guided by the case law of the Court of Appeals for the Sixth Circuit, correlates to and incorporates the factors for Rule 37 analysis outlined by the Court of Appeals.

to cross-examine the Plaintiff about the printed copies, which are inconsistent with one another, and the Defendant will have the opportunity to ask the Plaintiff, in front of the jury, why the digital images were not preserved.  Moreover, the Court cannot find bad faith on the facts before it.  Accordingly, the Court finds that dismissal is not an appropriate sanction.

In fashioning a lesser sanction, the Court has considered an array of case law relating to spoliation generally and spoliation of digital images and documents specifically.

The Court finds Arch Insurance Co. v. Broan-NuTone, LLC, 2012 WL 6634323 (6th Cir. Dec. 21, 2012), to be instructive.  In Arch Insurance, plaintiffs filed a subrogation action in September 2009, relating to a fire at a municipal fire station.  As early as October 17, 2007, one month after the fire, an insurance adjuster had opined that the fire was caused by an exhaust fan. Id. at *2.  The exhaust fan was inspected by an engineering company.  Thereafter, a third-party administrator received an invoice from the engineering company charging a fee for continued storage.  Id. To minimize costs, the third-party administrator gave permission for the exhaust fan to be destroyed without consulting either the plaintiff or the defendant.  Id.  The district court concluded that a permissive adverse-inference instruction was the appropriate sanction for this spoliation.  Id. at *3.

The Court of Appeals for the Sixth Circuit in Arch Insurance found that the district court's use of a permissive adverse-inference instruction as a sanction was not an abuse of discretion.  Id. at *5.  In so deciding, the Court of Appeals noted that defendant had access to the exhaust fan before it was destroyed and was on notice of the plaintiff's general theory of recovery.  Id. at *3.  The Court of Appeals noted that a "permissive instruction is particularly appropriate if the evidence was not intentionally destroyed."  Id. at *4 (citing Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996)).  The defendant in Arch Insurance argued that the

permissive instruction had no effect at all, but the Court of Appeals found that "the instruction came dressed in the authority of the court, giving it more weight than if merely argued by counsel." 2012 WL 6634323 at *5 (citing Boyde v. California, 494 U.S. 370, 384 (1990)).

The Court also finds Christou v. Beatport, LLC, 2013 WL 248058 (D. Colo. Jan. 23, 2013),[4] to be persuasive authority with regard to the appropriate punishment. In Christou, defendant took no steps to preserve text messages on his iPhone. Id. at *13. Defendant submitted that he had lost the phone and with it any text messages saved on it. Id. The court in Christou could not make a finding of relevancy based upon the evidence before it and had no "basis to assume that the loss of the phone was other than accidental." Id. at *14. Nonetheless, the Court found that it was appropriate to allow the opposing party to present a litigation hold letter and reference the failure to preserve at the trial and to allow the jury to make an appropriate inference. Id.

The Court finds that a permissive adverse-inference instruction is the appropriate sanction in this case. The Court will instruct the jury that it may infer, but is not required to infer, that the Plaintiff did not take the digital photo of the certificate of completion at the time to which she has testified, based upon her failure to preserve the digital images and their accompanying metadata.

In reaching this conclusion, the Court has weighed the fact that the Plaintiff was, at least, negligent in the destruction of the digital images, and as in Arch Insurance and Christou, the Court finds that this level of culpability does not support dismissal. In addition, the Court has considered the fact that the Defendant has access to printed copies of the digital images and the

---

[4] The Court is aware that Christou was decided by a district court sitting in the Ninth Circuit. The Court has considered this persuasive authority, because as the Court of Appeals for the Sixth Circuit has noted, "Because earlier precedents in this circuit applied state law on spoliation, we look to other circuits for guidance in this inquiry." Beavan, 622 F.3d at 553.

14

fact that the Defendant has been aware that these digital images existed since at least November 11, 2013. [Doc. 95-1 at 9].

Some members of the jury may be familiar with the ease with which digital images can be obtained and preserved, and the jury can consider the Plaintiff's failure to preserve the digital images of the certificate of completion. The Court finds that taking the jury's knowledge a step further and cloaking the jury's own potential inferences in the authority of the court will increase the deference afforded to the potential inference. The permissive adverse-inference instruction remedies any advantage that the Plaintiff may have gained through her spoliation, while at the same time allowing the jury to fulfill its role as fact finder. The Court finds that a mandatory adverse-inference instruction would be too strong a sanction under the circumstances.

The Defendant may submit suggested language for the permissive adverse-inference on or before **May 31, 2013**, and the Plaintiff will have up to and including **June 10, 2013**, to object to the language used. In addition, the Defendant will be allowed to cross-examine the Plaintiff regarding the spoliation of the digital images, employing the Plaintiff's inconsistent statements in her depositions for impeachment as appropriate. Further, the Defendant may introduce the letter from Mr. Burkhalter dated January 16, 2009, conveying on behalf of the Plaintiff the need to preserve evidence, as relevant evidence at the trial of this matter.

**B.** **The Additional "Box of Emails"**

The Court turns next to the issue of the additional "box of emails."  As noted above, on

February 14, 2013, Plaintiff testified:

> Q:  You started sending yourself a whole bunch of e-mails in November right before you
>
> were fired?
>
> A:  Is there a problem with that?
>
> Q: They haven't been produced in discovery.  Do you have an explanation for that?
>
> A:  They're in a box somewhere, and I'm not the – I can't – I didn't – I can't go do this.  I
>
> wasn't representing myself.
>
> Q:  No, your obligation is to make sure that your lawyer has everything.
>
> A:  He does have everything.
>
> Q:  Okay.  So we think there's a box of e-mails somewhere that haven't been produced?
>
> A: Yes.

[Doc. 95-1 at 33].

The date for producing these emails expired last year.  The Court, however, finds that in

the interest of adjudicating this matter on its merits, the Plaintiff will be afforded a final

opportunity to produce these emails.  The Plaintiff **SHALL PRODUCE** any and all relevant

emails that are under her control.  The Court interprets the term "under her control" to include

any emails contained in email accounts held in Plaintiff's name, either personal or professional,

to which the Plaintiff has access or the *ability* to obtain access.  It is not enough for Plaintiff to

say that she cannot recall her password or that she does not generally use an account any more.

If Plaintiff asserts that she is *not able* to access an email account, she **SHALL SUBMIT** an

affidavit stating the steps she has undertaken to obtain her password to the account or otherwise

access the account.  Plaintiff **SHALL PRODUCE** <u>*all*</u> relevant emails and/or any affidavit explaining non-production on or before **April 19, 2013**.

Further, the Court unequivocally **ORDERS** that the Plaintiff shall produce any relevant evidence under her control on or **April 19, 2013**.  This is an all-inclusive order directing that any discoverable evidence, in any form that it might take, be produced on April 19, 2013.  Failure to produce any relevant discovery may result in the Court imposing the sanctions listed in Rule 37(b)(2), which include *inter alia* dismissal or "directing that . . . designated facts be taken as established for purposes of the action."

Defendant will have up to and including **May 3, 2013**, to file any motions for spoliation or other motions related to this production, and Plaintiff will have up to and including **May 17, 2013**, in which to respond.

C. **The Certificate of Completion, Marked as PLF000436**

The Court turns next to the document referred to as PLF000436, which appears as follows:



[Doc. 95-15 at 37].

Defendant maintains that in February 2013, nearly three years into the instant litigation, the Plaintiff stated that she did not recognize this document. Defendant argues that providing false documents in discovery is a basis for sanctions. [Doc. 95 at 12]. Defendant contends that Plaintiff has admitted to submitting a fraudulent certificate, and Defendant argues that, absent

some "cogent explanation for this discovery fraud," the alleged misconduct is grounds for dismissal. [Id.].

Plaintiff responds that she has produced a copy of the Red Book certificate, Document LLY-Gilley001926, she sent to Defendant by fax and Federal Express, and she has been questioned about the same. Plaintiff maintains that the Defendant will have an opportunity to cross-examine the Plaintiff regarding any inconsistencies between Document No. LLY-Gilley001926 and Document No. PLF000436. [Doc. 100 at 2]. Plaintiff maintains that the discrepancies between these documents and Plaintiff's statement disavowing Document No. PLF000436 are not grounds for dismissal.

Defendant appears to lodge its request for discovery sanctions pursuant to Rule 37(c) of the Federal Rules of Civil Procedure based upon a failure to provide information or supplement. Rule 37(c)(1) directs, "If a party fails to provide information . . . , the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified." In addition, Rule 37(c)(1) that as an alternative sanction the court may impose other appropriate sanctions under subpart (b)(2)(A) of Rule 37. These sanctions may include dismissal. See Fed. R. Civ. P. 37(b)(2)(A).

As noted above, the Court must consider four factors in evaluating a request to impose sanctions, including dismissal, under Rule 37. As noted above, these factors are whether: (1) the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) the adversary was prejudiced by the party's failure to cooperate in discovery; (3) the party was warned that failure to cooperate could lead to the sanction; and (4) less drastic sanctions were first imposed or considered. Freeland, 103 F.3d at 1277.

Initially, the Court finds that the Plaintiff's disavowal of Document No. PLF00436 is a failure to supplement under Rule 37, and thus, the Court turns to fashioning an appropriate remedy.

Applying the relevant factors, the Court finds that the Defendant has demonstrated that the Plaintiff's disavowal of Document No. PLF00436 was her fault. The Court, however, cannot find bad faith. The Defendant's brief does not cite the Court to facts supporting such a finding. The Court finds that this first factor weighs in favor of awarding a sanction, though not necessarily a sanction of dismissal.

Turning to the second factor, the Court finds that the Defendant was prejudiced by the Plaintiff's disavowal. On February 13, 2013, counsel for the Plaintiff wrote to counsel for the Defendant:

> Ms. Gilley does not recognize document PLF 436 and has no idea where it came from nor why it was produced by her counsel. She is adamant that the training test did not display a certificate entitled "The Red Book Training", she state to me that it simply stated "The Red Book" when it appeared on her screen. Obviously you can ask here [sic] about this at her supplemental deposition tomorrow.

[Doc. 95-14 at 2]. Counsel for the Plaintiff sent this email at 3:26 p.m. on the day before the supplemental deposition. The Court finds that the last minute disavowal of Document No. PLF00436 prejudiced the Defendant in its preparations for the supplemental deposition. The Court finds that this second factor weighs in favor of imposing a sanction.

Turning to the third factor, the Court finds that the Defendant has not directed the Court to any Order of the Court warning the Plaintiff that this type of behavior or failure to cooperate generally would lead to sanctions. The Court finds that the third factor does not weigh in favor of imposing a sanction.

With regard to the fourth factor, the Court finds that lesser sanctions have not been imposed and are likely to be effective. The Defendant concedes that lesser sanctions have not been imposed, but the Defendant argues that the disavowal could not be remedied through a lesser sanction. The Defendant's argument was based in part on the fact that at the time of briefing this case was set for trial on March 18, 2013. On March 14, 2013, the trial of this matter was reset to July 22, 2013. The Court finds that this additional time allows for lesser sanctions. The Court finds that the fourth factor weighs in favor of imposing a sanction other than dismissal.

Based upon the foregoing, the Court finds that sanctions should be imposed against the Plaintiff based upon her disavowal of Document No. PLF00436. The Court has considered the violation and failure to disclose in the context of this case, and the undersigned **RECOMMENDS** that the Plaintiff be sanctioned as follows:

1. Plaintiff **SHALL** sit for a third deposition, not longer than three (3) hours, between **May 20 and May 30, 2013**;

2. Plaintiff **SHALL** bear all costs and expenses – including attorneys' fees incurred by the Defendant, court reporter costs, and transcription costs – incurred in taking this third deposition;

3. All costs and expenses **SHALL** be paid to the appropriate vendors on or before **June 14, 2013**;

4. Defendant may question Plaintiff about Document No. PLF00436 at the trial of this matter, citing to any previous deposition testimony for impeachment; and

5. The Court will instruct the jury that: (1) a party has a duty to produce documents in discovery in good faith and (2) when a party is represented by counsel, counsel's actions

are imputed to that party. The Defendant may submit suggested language for these instructions on or before **May 31, 2013**, and the Plaintiff will have up to and including **June 10, 2013**, to object to the language used.

### III. CONCLUSION

In sum, the undersigned finds that the Motion to Dismiss as Sanctions for Discovery Abuse and for Spoliation is well-taken in part, and for the reasons stated herein, the undersigned **RECOMMENDS**[5] that it be **GRANTED IN PART** and **DENIED IN PART**. The undersigned **RECOMMENDS** that the Plaintiff be **SANCTIONED** as stated above and the parties be **ORDERED** to comply with the dates and deadlines set out in this Report and Recommendation.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).